AO 91 (Rev. 11/11) Criminal Complaint      AUSA: Craig A. Weier      Telephone: (313) 226-9678
                                           Special Agent: Tyler Goodnight   Telephone: (313) 234-2426

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
D-1 Sameerah Marrell
   aka "Sameerah Anderson"
   aka "Sameerah Pickett"
   aka "Creme"
   aka "Lauren Boyd"
D-2 Noelle Brown
   aka "Nikki Brown"

Case No.

Case: 2:20-mj-30432
Assigned To : Unassigned
Assign. Date : 10/19/2020
Description: RE: SEALED
MATTER
(EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 2014 through July 2018__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 286 | False claims conspiracy |
| 18 U.S.C. 287 | False claims |
| 18 U.S.C. 1028A | Aggravated identity theft |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_Tyler Goodnight_
Complainant's signature

Special Agent Tyler Goodnight
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __October 19, 2020__

_David G. M___
Judge's signature

City and state: __Detroit, MI__

David R. Grand, United States Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tyler Goodnight, being first duly sworn, hereby states:

1. I am a Special Agent with the Internal Revenue Service [IRS], Criminal Investigation [CI], and have been so employed since July 2008, currently assigned to the Detroit Field Office. My responsibilities include investigation of possible criminal violations of the Internal Revenue Laws (Title 26 of the United States Code) and related offenses found in Title 18 of the United States Code. As a Special Agent with IRS-CI, I received formal training in conducting criminal tax and related financial investigations. I assist in conducting investigations of a variety of tax and related financial offenses. Through my training and experience, I am familiar with the ways many individuals commit tax and financial crimes. My duties have always included analysis of records for evidence of criminal activity. I am also well aware that the IRS is an agency of the United States, a part of the United States Department of Treasury, and handles the collection of federal tax revenue for the United States, which becomes government money upon collection.

2. As a Special Agent, I successfully completed training at the National Criminal Investigation Training Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. There, I received

1

extensive training in conducting financial investigations involving analysis of books and records of individuals and businesses, such as journals, ledgers, bank accounts, invoices, receipts, for evidence of violations of the Internal Revenue Code. I hold a bachelor's degree in Criminal Justice and in Business Administration with a concentration in Accounting from Olivet College.

3. The information contained in this affidavit is based on my personal knowledge, information I received from other law enforcement agents assisting in this investigation, my review of bank records and federal tax records, and other sources specifically described below.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint and warrants for arrest, it does not include all the facts that I have learned during this investigation.

5. Based on the facts contained in this affidavit, there is probable cause to believe **SAMEERAH MARREL and NOELLE BROWN** committed offenses against the United States, specifically false claims conspiracy, making false claims to the Internal Revenue Service [IRS], theft of government money, and aggravated identity theft in violation of Sections 286, 287, 641 and 1028A of Title 18 of the United States Code,

respectively.

6. According to public databases I have reviewed, including official state and law enforcement databases in Michigan and Georgia, **SAMEERAH MARREL [SAMEERAH] has used the aliases Sameerah Anderson, Sameerah Pickett, Crème, and Lauren Boyd,** and is a 39-year-old woman (date of birth: 11/11/1980), who resides and has resided in both metro Detroit, MI and metro Atlanta, GA throughout the period of criminal activity described below.

7. According to public databases I have reviewed, including official state and law enforcement databases in Michigan, **NOELLE BROWN [BROWN] has  used the alias Nikki Brown,** and is a 37-year-old woman (date of birth: 07/20/1983), who resides and has resided in the metro Detroit, MI area throughout the period of criminal activity described below.

8. Based on social media sites I have reviewed, including Instagram and Facebook, as well as other internet content containing videos, photos and other information pertaining to these two subjects, and interviews of their acquaintances, SAMEERAH and BROWN were friends during the period of the criminal activity described below, and had previously performed together in a musical group they called "Deuces Wild."

9. Beginning in February 2016, I received information from the IRS Scheme Development Center [SDC] which had identified a number of false and fraudulent Forms 1041 U.S. Income Tax Return for Estates and Trusts filed with the IRS for the tax years 2013 to 2017. These returns were all identified as fraudulent because the returns claimed that the IRS had withheld large amounts of income tax from the trusts purportedly filing the returns, and that those trusts were therefore entitled to large refunds of the excess income tax withheld. In fact, with respect to each of the returns I was tasked to investigate, IRS records showed that the IRS did not withhold anything at all related to these trusts', and that they were therefore entitled to no refund of any kind. Altogether, the SDC referred **122 such Forms 1041** to me for further investigation after having determined that they falsely reported withholdings and **claimed refunds totaling $13,690,341.00**. These returns were filed with the IRS from March 22, 2014 to July 19, 2018 for tax years 2013-2017. The IRS, before recognizing the fraudulent nature of the returns, actually **paid out a total of $5,539,049.28** based on these claims.
10. The SDC had also linked these 122 returns to one another in various ways to establish that they were filed as part of a common scheme,

4

perhaps by the same person or persons. They found commonalities in the trust and trustee names and addresses used and other common characteristics such as Forms 1099 from the same "Payer" submitted with the returns, as well as listing common return preparers on some trust returns. My task was therefore to determine the person or persons responsible for the fraud uncovered by the SDC.

11. My analysis of the 122 returns first confirmed that the returns were indeed related and filed as part of a common scheme, for the same reasons the SDC reached the same conclusion.

12. Next, my review of the returns revealed that most (106) of them were prepared in paper form and then mailed to the IRS. 69 of these paper tax returns were mailed from Michigan, along with 13 being mailed from Georgia.

13. However, 16 of the 122 trust tax returns were filed electronically using Internet Protocol [IP] addresses to transmit these tax returns to the IRS. These returns were filed from January 30, 2015 to March 02, 2016. The IP addresses used to file these returns were recorded by the IRS upon filing, and I obtained IRS records containing IP addresses used to file them.

14. These 16 electronically filed trust tax returns used four different IP

5

addresses to transmit the returns to the IRS. I obtained and reviewed records from the internet service providers [ISPs] and determined that two of the IP addresses used to file the fraudulent trust returns had been assigned to SAMEERAH as the subscriber at the time of filings. More specifically:

a. AT&T was the ISP for two of the IP addresses and, according to its records, these IP addresses (99.59.39.123 and 104.184.20.170) were both assigned to SAMEERAH's AT&T account when the returns were filed with these IP addresses. These two IP addresses were used to file five returns, fraudulently seeking $274,970.00 in refunds.

b. AT&T also provided the physical addresses where these two IP addresses were assigned: 23384 Cornerstone Village Dr, Southfield, MI and 5460 Olivia Michal Place Apt 106, Westerville, OH. I noted that both of these addresses were also used on five of the trust tax returns as the address of the trusts filed pursuant to the scheme.

c. The IP address 104.184.20.170 was used to file two returns. These returns were analyzed and revealed that two refund checks were issued and deposited into two separate Huntington Bank

6

Accounts. My review of these Huntington Bank records revealed the accounts were opened by a person identified as SAMEERAH on December 30, 2014 and March 04, 2015.

d. The records for the other two IP addresses used to file 11 returns were unavailable. However, those 11 returns were analyzed and revealed that both IP addresses were used to file returns that resulted in three refund checks being issued and deposited into three separate Huntington Bank accounts. My review of these three Huntington Bank records revealed the accounts were opened by a person identified as SAMEERAH on March 04, 2015, May 13, 2015, and September 26, 2015.

e. Altogether, the 16 electronically filed false returns requested refunds totaling $876,920.00, of which $299,386 was paid out in six refund checks. Five of these refunds went into Huntington Bank accounts opened by SAMEERAH, according to bank records I obtained and reviewed. She was the sole signatory on those accounts, and a large portion of the funds were removed from these accounts and spent after their deposit.

f. The AT&T IP address 104.184.20.170 was also used to transmit SAMEERAH's 2014 Form 1040 US Individual Income Tax Return,

7

according to IRS records I reviewed.

g. I reviewed bank surveillance videos provided by Huntington Bank for four of SAMEERAH's accounts referenced in subparagraphs 14(c) and (d), above. My review showed the same woman accessing (making withdrawals and deposits) all four of these accounts. I compared the woman in the videos with the Michigan Driver License photo of SAMEERAH and found them to be the same person. During the review of the surveillance videos, I was able to see SAMEERAH deposit multiple refund checks derived from some of the 122 returns I analyzed into her accounts at Huntington Bank, as more specifically described below.

h. From the 16 electronically filed returns, two of the refund deposits were captured on video. On 03/09/2015, video surveillance and corresponding bank records show SAMEERAH filling out a deposit slip and handing the teller a refund check (Lucid Communication Trust - $62,010.00) to be deposited it into her account xxx9664 in the business name of Lucid Cummincations. That return was filed using SAMEERAH's AT&T IP address 104.184.20.170. On 10/26/2015, video surveillance shows SAMEERAH hand a refund check (Clean Sweep Properties - $65,019.00) to a Huntington

8

employee for deposit into her account xxx1185 in the business name Clean Sweep Properties. The return was filed using IP address 68.41.39.84.

   i. While reviewing the Huntington Bank surveillance videos, Sameerah can be seen depositing two other refund checks into her accounts. On 10/23/2015, SAMEERAH can be seen at a drive thru teller window depositing a refund check (For Weaves Only Distributors Trust - $31,111.00) into her account xxx0070 in the business name of For Weaves Only. On 10/16/2015, SAMEERAH can be seen depositing a refund check (Lucid Communications Tech Trust - $57,234.00) into her account xxx9664 in the name of Lucid Communications.

15. Of the remaining 106 returns that were filed in paper form by mailing them to the IRS, I was able to identify, by reviewing IRS and banking records, 20 trust tax refund checks that were deposited into accounts opened by SAMEERAH. Those 20 trust tax refunds totaled $1,345,406.69 and were issued between 12/29/2014 and 09/04/2017. The related trust tax returns were filed from 11/15/2014 to 08/05/2017.

16. My investigations disclosed that SAMEERAH opened at least 29 bank accounts during the period 2014 to 2018. A review of the bank records

9

pertaining to those accounts determined that:

a. 14 of those accounts had 25 fraudulent trust tax refund checks directly deposited into them (issued as a result of the filing of some of the 122 returns I was looking into).

b. An additional eight of those 29 accounts received money derived from some of the 122 fraudulent refunds from transferring a portion of the refund proceeds from the accounts into which they were initially deposited.

c. One of these trust tax refunds deposited into an account opened by SAMEERAH was in the name of a trust using the name of an individual whose initials are AK as trustee, who claims to be an identity theft victim. The AK name is connected to five different fraudulent trust returns, resulting in the issuance of three refunds, discussed in more detail below.

d. There were a total of 5 false trust tax returns filed using AK's name requesting $2,477,652 in refunds, resulting in the release of fraudulent refunds totaling $462,601. My review of federal tax and banking records revealed that two of those refunds were deposited into a Huntington Bank account xxx4197 opened online in AK's name, which AK stated she did not open. All activities for the

account were done online, through the ATM, or using drive-through windows. Numerous checks were written from the Huntington account and deposited into accounts in the names of SAMEERAH and "JP". One cashier's check for $17,003.55 was written from the AK account to LJB Automotive LLC, which, according to official records filed with the State of Michigan, is a company registered to SAMEERAH.

e. The bank records I reviewed also revealed multiple transactions between SAMEERAH's accounts and accounts in the name of an individual whose initials are JP. These transactions occurred after fraudulent trust tax refunds were deposited into the JP accounts.

f. On May 04, 2018, IRS-CI Special Agents interviewed JP about the refunds and returns, and JP claimed to be a victim of ID theft, and said that she did not know SAMEERAH and did not give SAMEERAH permission to set up trusts or file any tax returns in her name.

g. In the course of the investigation, I also obtained a copy of an Ohio driver license in JP's name, issued on 03/03/2016. Although the license was in the name of JP, it contained a photograph of a person I recognized to be SAMEERAH, based on my review of a

11

    Michigan driver license in her name as well as internet and social media content I reviewed. Based on bank records and witness interviews, this identification was used by SAMEERAH to open bank accounts, rent apartments, open a UPS Box, and to purchase expensive items like jewelry and vehicles.

h. My review of the 122 tax returns and related tax and bank records obtained in the course of the investigation showed that, from July 17, 2017 to May 31, 2018, a total of 8 fraudulent trust tax refunds were deposited into accounts in the name of JP requesting refunds of $1,061,473.00 with $1,066,332.77 actually refunded (interest was added to two refunds). In addition, from March 02, 2016 to September 30, 2017, 14 more trust tax returns using the name of JP or signed using a signature with the name JP were filed, requesting an additional $1,600,830.00 in refunds. These 14 additional requested refunds were not paid, however. All 22 Forms 1041 were filed for tax years 2015, 2016 or 2017.

i. SAMEERAH's IP address 99.59.39.123 was used on March 02, 2016, to file a 2015 electronic return that lists JP as the trustee. This return requested a refund of $62,457.00 but was not released.

12

17. On September 10, 2018, another IRS-CI agent and I interviewed an individual whose initials are CH about her name being used on a Form 1041 Trust Tax Return filed in the name "CH Trust" which was filed with the IRS on July 8, 2017. This Trust Tax Return falsely reported excess tax withholdings and claimed a refund of $51,236.00. CH indicated during the interview that she has been best friends with BROWN since she was 13 years old. CH stated BROWN and SAMEERAH were very close friends. Around mid-2017, BROWN told CH that SAMEERAH knew how to apply for grants, and SAMEERAH was willing to help CH apply for a business grant. CH gave BROWN her name, and PII, including her Social Security Number and Date of Birth. BROWN told CH that BROWN gave her PII to SAMEERAH. SAMEERAH later told CH that her name would be put into a pot and the winner would get the grant money. CH was not told how much the grant would be or how much she would have to pay SAMEERAH.

18. CH further advised the interviewing agents that CH later received a check from the IRS for $51,236.00. The check had CH's name on it, so CH deposited it into CH's Chase Bank account. After letting the check clear, BROWN instructed CH to get a cashier's check for $28,975.00 and have it put into the name of SAMEERAH's business, "Clean Sweep

Properties LLC". CH searched a state website and found that SAMEERAH was the Resident Agent for the business, so it appeared legitimate. CH gave the cashier's check to BROWN, and believes BROWN gave the check to SAMEERAH. CH did not sign the Form 1041 Trust Tax Return shown to CH, nor give anyone permission to sign CH's name to any forms. CH noted that whoever signed her name on the return spelled it wrong. If CH would have been told that a tax return was going to be filed, CH would not have been okay with it. CH stated BROWN is someone she trusted, and CH knew BROWN had applied for a grant in the past.

19. CH questioned BROWN and SAMEERAH about the process and asked if CH would have to pay taxes on the money, but BROWN and SAMEERAH assured CH would not. CH knows through discussions that BROWN had referred other people and would get a portion of the money. CH also knows through discussions with BROWN that BROWN and SAMEERAH rented a yacht in 2018. According to bank records I reviewed, the cashier's check written from CH to "Clean Sweep Properties" was deposited into a 5/3 Bank account in the name of "Clean Sweep Properties LLC," which I confirmed through official public records was a business registered by SAMEERAH on 10/26/2015. The

14

cashier's check was endorsed by SAMEERAH at the time of deposit. This 5/3rd Bank account also received a trust tax refund in the name "Properties Sweep Clean Trust".

20. An individual whose initials are LC was interviewed by IRS-CI agents on May 24, 2018 and advised them that he met BROWN through a mutual friend whose initials are RW who was dating BROWN at the time. BROWN later introduced LC to "Crème" who he identified as SAMEERAH through a photograph. LC met with SAMEERAH one time, talked to her once on the phone, and the remainder of his contacts were with BROWN and RW.  Around July of 2017, BROWN contacted LC and told him that SAMEERAH worked for the IRS, so she knew all the loopholes and had an opportunity to get LC some money. Over a three-way phone conversation, BROWN and SAMEERAH explained to LC that they only needed his name and address and they did not need his date of birth or Social Security Number.  LC provided his and his wife's names and addresses but did not sign any forms or authorize them to sign any forms for him. LC was told he should expect to get a check for between $50,000 and $100,000, and that he would get to keep $15,000.

21. Tax records show that the IRS received two Forms 1041 Trust Tax Returns linked to LC and his wife, BC, on July 11 and 12, 2017,

15

respectively, and both returns requested a refund of $78,516.00. LC said he received a call from BROWN stating the checks were on the way, and he needed to open a new bank account at either Chase or Huntington Bank. LC received two refund checks, one for each trust tax return filed with the IRS, on August 14 and 15, 2017. BROWN told LC he was not allowed to deposit both checks into the same bank account. LC opened an account at Huntington Bank, signed the refund check for both him and his wife, and deposited the $78,516.00 refund check into the new account. After the check cleared, LC called RW. LC advised that it was clear to him that RW was with BROWN during this call, and that BROWN was directing RW what to say.

22. LC indicated to interviewing agents that, on 08/21/2017, BROWN and RW instructed him to obtain a cashier's check in the name "Level Ten Promotions LLC" in the amount of $47,858.11 and give it to them. LC got the cashier's check and gave it to BROWN and RW in the parking lot at LC's work.

23. LC advised agents that he and his wife received and signed the second IRS refund check for $78,516.00, and LC deposited it into a new Huntington account opened in his wife's name. On 08/24/2017, Brown directed LC to obtain a cashier's check for $47,905.35 in the name

"Luxley Luxury Group LLC". LC did so and believes he gave RW and BROWN this check as well. LC remembers two later occasions when BROWN requested that LC withdraw funds from the new accounts. On each occasion, he obtained a cashier's check for $15,000 payable to "Lucid Event Promo" as instructed. One of those times, LC gave the money to RW and BROWN, and the other time he gave the money to RW alone.

24. LC claimed that LC and BC (his wife) did not know a Form 1041 Trust Tax Return was going to be filed to produce the refund checks in question. Neither LC nor BC signed the tax returns or gave anyone permission to sign their names to the tax returns. I interviewed BC on November 9, 2018, and she confirmed that she had not seen the 1041 Trust Return, and that her signature was a forgery.

   a. According to 5/3 Bank records I obtained and reviewed, the two $15,000 cashier's checks written to "Lucid Event Promo" were deposited into a 5/3rd Bank account in the name of "Lucid Event Promo LLC" opened by BROWN (this account also received a trust tax refund in the name of "Brown Nicole Noelle Trust").

   b. The cashier's check to "Level Ten Promotions LLC" for $47,858.11 was deposited into a Bank of America account in the name of

"Level Ten Promotions LLC" opened in the name of JP (this account also received a trust tax refund in the name of "Level Ten Promotions Trust").

c. The cashier's check to "Luxley Luxury Group LLC" for $47,905.35 was deposited into an unknown bank and account but was signed by SAMEERAH and stated "Luxley Luxury Group LLC" under the endorsement.

25. My investigation revealed 10 Forms 1041 Trust tax returns, of the 122 I originally reviewed, were linked to BROWN by either being in her name or signed by "NOELLE BROWN". These returns requested a total of $2,340,734.00 in refunds, with $2,100,065.12 being issued by the IRS through six refund checks. Some of the funds were frozen by the banks and are in the process of being returned to the IRS. According to tax and bank records I reviewed, four of these refunds went into accounts opened by NOELLE BROWN, and two others went into accounts opened by JP.

26. One of Brown's accounts that received two trust tax refunds was closed by Chase Bank and BROWN was issued a cashier's check for $1,815,239.90, the proceeds of the fraudulent tax refunds. That cashier's check was deposited into a Bank of America joint account

opened by both BROWN and SAMEERAH.

27. This scheme covers a total of 122 fraudulent Forms 1041 U.S. Income Tax Return for Estates and Trusts filed with the IRS for the tax years 2013 to 2017. The total fraudulent figures for the above scheme are (not including relevant conduct):

   a. Claims against the IRS: $13,690,341.00

   b. Total losses to the government discussed herein: $5,539,049.28

28. Based on the information set forth in this affidavit there is probable cause to believe **SAMEERAH MARREL** and **NOELLE BROWN** committed offenses against the United States, specifically false claims conspiracy, making false claims to the IRS, theft of government money, and aggravated identity theft in violation of Sections 286, 287, 641 and 1028A of Title 18 respectively.

_____ *Tyler Goodnight* _____
Tyler Goodnight
Special Agent, Internal Revenue Service
Criminal Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
HONORABLE DAVID R. GRAND
United States Magistrate Judge

October 19, 2020